**The relief described hereinbelow is SO ORDERED.**

**Signed October 25, 2024.**

_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| In re:<br>**AARON ADAMSON,**<br>　　　　　　　Debtor. | Case No. 23-30941-cgb<br>Chapter 7 |
| **PERRY GREENUP and MARY GREENUP,**<br>　　　　　　　Plaintiffs,<br>v.<br>**AARON ADAMSON,**<br>　　　　　　　Defendant. | Adv. No. 23-03011-cgb |

## MEMORANDUM OPINION AND FINAL JUDGMENT

　　Before the Court is an adversary proceeding brought by Perry and Mary Greenup (the "Greenups") seeking to have a debt allegedly owed to them by Aaron Adamson ("Mr. Adamson") declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). A trial was held on August 13, 2024, after which the Court took the matter under advisement. After considering the record, arguments, admitted exhibits, and applicable law, the following constitutes the Court's findings of fact and conclusions of law. Based on these findings and conclusions, the Court

has determined that the Greenups failed to prove the requisite elements to have their claim declared nondischargeable.

## Jurisdiction and Authority

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334(a) and (b). This matter is a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Court has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference. The parties each filed statements consenting to the Court's authority to enter a final judgment in this adversary proceeding.[1]

## Procedural History

On September 20, 2023, Mr. Adamson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[2] On October 2, 2023, the Greenups filed a proof of claim[3] in the bankruptcy case, which they amended on October 17, 2023.[4] On December 26, 2023, the Court entered an order[5] granting Mr. Adamson a discharge.

On December 22, 2023, the Greenups filed their *Original Complaint for Determination of Dischargeability of Debts Pursuant to 11 U.S.C. Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6)*.[6] On January 20, 2024, Mr. Adamson filed his *Answer to Complaint to Determine Dischargeability of Debt*.[7] On July 24, 2024, the parties filed a *Joint Pre-Trial Order* (the "Joint PTO"),[8] Mr. Adamson filed a separate *Defendant's Pre-Trial Order*,[9] and the Greenups filed

---

[1] ECF Nos. 6 and 10.
[2] Bankr. ECF No. 1.
[3] Bankr. Claim No. 1-1.
[4] Bankr. Claim No. 1-2.
[5] Bankr. ECF No. 18.
[6] ECF No. 1.
[7] ECF No. 4.
[8] ECF No. 15.
[9] ECF No. 14.

2

their *Proposed Findings of Fact and Conclusions of Law*.[10] On July 30, 2024, Mr. Adamson filed his *Proposed Findings of Fact and Conclusions of Law*.[11]

## Findings of Fact[12]

The Greenups are both retired. Mr. Greenup had worked in the construction field since 1979 and retired in December 2021 after thirty-three years with El Paso Electric. Mrs. Greenup taught at various schools in El Paso, and in the early 2000s, Mr. Adamson was one of her middle school students.

The Greenups lost money in the stock market and, shortly after retiring, decided to try flipping houses to recoup their losses. In February 2022, Mrs. Greenup reached out to Mr. Adamson to discuss purchasing real estate in El Paso.[13] Mr. Adamson is a licensed real estate agent[14] and worked for several years at an investment company in California that bought and sold properties.

The Greenups met with Mr. Adamson in person in February 2022 and found him to be knowledgeable. At the time, Mr. Adamson was twenty-seven years old and had never personally owned, invested in, or renovated any properties. The Greenups both testified that Mr. Adamson never represented that he had any experience renovating houses but that he did indicate that he had connections with local real estate professionals and contractors.

Mr. Adamson agreed to provide real estate consulting services to the Greenups for $30 per consultation. The Greenups and Mr. Adamson looked at several houses together, and Mr. Adamson provided the Greenups with his assessment of possible renovations and potential profitability.[15] In March 2022,

---

[10] ECF No. 16.

[11] ECF No. 18.

[12] Any finding of fact that should be more appropriately be characterized as a conclusion of law should be regarded as such, and vice versa.

[13] Joint PTO, ECF No. 15 ¶ 9; Ex. P-1 at 1.

[14] Ex. D-20.

[15] *See, e.g.*, Ex. D-2 at 1–4.

3

Mrs. Greenup asked Mr. Adamson for his thoughts on the property at 5109 Danny Drive in El Paso (the "Danny Property"):[16]



Mr. Adamson acted as the real estate agent for the Greenups with respect to their purchase of the Danny Property. Mr. Adamson connected the Greenups to a home inspector to inspect the Danny Property,[17] and the Greenups had several contractors provide estimates for repairs and renovations.[18] The Greenups purchased the Danny Property in cash, and Mr. Adamson received a buyer's agent commission. The Greenups renovated the Danny Property—periodically asking Mr. Adamson for advice[19]—and sold it in March 2023 but ultimately did not break even on the transaction.

On March 31, 2022, the Greenups proposed working together with Mr. Adamson on a property, with Mr. Adamson securing financing to purchase the property while the Greenups paid for the renovations:[20]

> Hello Aaron! Perry was saying, if you want to take a look at the Federal house and maybe we could go in together on it. if you leveraged your money and we paid for the renovation, we'll something like that.

Over the next few months, the Greenups and Mr. Adamson considered several properties, including the property at 3209 Mountain Avenue in El Paso (the "Mountain Property"). Mr. Adamson, based on representations from the then-owner that the Mountain Property required only cosmetic repairs, estimated

---

[16] Ex. D-2 at 5.
[17] Ex. D-2 at 7.
[18] Ex. D-2 at 7.
[19] *See, e.g.*, Ex. D-2 at 12, 14, 15, 16, 20.
[20] Ex. D-2 at 13.

that renovations would cost approximately $20,000 and that they could complete renovations and list the house for resale in one to three months.

The Greenups agreed to work together with Mr. Adamson on purchasing, renovating, and selling the Mountain Property. Mrs. Greenup testified that the following text exchange with Mr. Adamson on June 3, 2022, accurately memorializes the Greenups' understanding of their relationship:[21]



On June 7, 2022, the Greenups gave Mr. Adamson a check for $30,000 with the memo line: "home renovation loan."[22] The Greenups both testified that their understanding was that $20,000 would go towards renovating the Mountain Property while the other $10,000 would remain in Mr. Adamson's bank account for the potential purchase of another home that the Greenups and Mr. Adamson could work on together.

Mr. Adamson paid for an appraisal of the Mountain Property and reviewed prices for comparable properties in the area,[23] but he neither had an inspection conducted nor did he personally inspect the interior. On July 13, 2022, Mr. Adamson

---

[21] Ex. D-2 at 25.
[22] Ex. P-4.
[23] Ex. D-4.

5

purchased the Mountain Property in his name, financed with a hard money loan in his name.[24] Two weeks after the sale closed, Mr. Greenup visited the Mountain Property for the first time, and the Greenups provided Mr. Adamson with their initial thoughts on the house:[25]

> It's definitely a project. It will probably run about 25,000 more to get it all done. I guess the 1st thing is to find our about the floor, then the sewer line. Those will be the bigger un planned expenses.

While performing demolition work in the Mountain Property, Mr. Adamson started to uncover more significant problems than expected, including issues with the plumbing, electric, and gas. On August 22, 2022, the Greenups and Mr. Adamson had not found another property to work on together, so Mrs. Greenup asked Mr. Adamson to send back the $10,000 he had retained in his bank account.[26] Mr. Adamson indicated that the unexpected repairs had caused the Mountain Property renovations to cost more than anticipated, so the Greenups agreed that Mr. Adamson could send back just $4,000 and use the other $6,000 for the Mountain Property renovations:[27]

> Sorry it's so late. I just wasn't sure if you would worry and stress. If we could get 4,000 back and you can use the other 6,000 for the reno that would work. Then after the sale we would get at least 26,000 back and then whatever profit that we split.

By May 2023, over $31,000 had been spent on repairs and renovations on the Mountain Property,[28] which Mr. Adamson testified were paid using the $26,000 from the Greenups and the remainder by Mr. Adamson personally. Mr. Adamson testified that he also personally paid for other costs related to the Mountain Property, including the ongoing mortgage payments, earnest money deposit, and utilities.

---

[24] Joint PTO, ECF No. 15 ¶ 12; Ex. D-6 at 6–20. *See also Motion to Annul Automatic Stay and Ratify Post-Petition Foreclosure Sale*, Bankr. ECF No. 11.

[25] Ex. D-2 at 37.

[26] Ex. D-2 at 40.

[27] Ex. D-2 at 40.

[28] Ex. D-16 at 15.

6

On March 10, 2023, the Greenups filed their *Plaintiffs' Original Petition* against Mr. Adamson in the District Court of El Paso County, Texas, Case No. 2023DCV0764, asserting various causes of action against Mr. Adamson related to the $30,000 payment and the Mountain Property. Mr. Adamson testified that by September 2023, he had incurred tens of thousands of dollars in credit card debt and exhausted his savings, and he could no longer afford to litigate the state court action or continue making mortgage payments on the Mountain Property. The lender accelerated the loan and foreclosed on the Mountain Property in October 2023.[29]

## Analysis

To have a debt deemed nondischargeable, a creditor must establish one of the statutory discharge exceptions by a preponderance of the evidence. *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017) (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). These exceptions apply only "when, in Congress's judgment, the creditor's interest in recovering a particular debt outweighs the debtor's interest in a fresh start." *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023). The discharge exceptions "are construed strictly against the creditor and liberally in favor of the debtor." *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).

**A.    Section 523(a)(2)(A)**

Section 523(a)(2)(A) bars the discharge of a debt for money obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "Generally, to prove 'actual fraud' under § 523(a)(2)(A), the creditor must show that the debtor made a false representation with intent to deceive the creditor and that the creditor 'actually and justifiably relied on the representation,' sustaining 'a loss as a proximate result.'" *Collins v. Zolnier (In re Zolnier)*, No. 21-20260, 2021 WL

---

[29] *See* Bankr. ECF No. 11.

7

5778461, at *2 (5th Cir. Dec. 6, 2021) (quoting *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 394 (5th Cir. 2018)).[30]

First, the Court finds that the Greenups have not satisfied their burden of establishing that Mr. Adamson made false representations with the intent to deceive them. Notably, it was the Greenups who initially reached out to Mr. Adamson for consulting services related to their plans to flip houses. While Mr. Adamson did tell the Greenups that he was a licensed real estate agent, that he had been working on large real estate transactions with an investment company in California, and that he knew local real estate professionals and contractors, no evidence was presented that these representations were not true. Instead, Mr. Adamson credibly testified that these statements were true, and this testimony was uncontroverted. Importantly, the Greenups both testified that Mr. Adamson never represented that he had any experience renovating houses.

Even if Mr. Adamson's representations about his experience and abilities were false, the Greenups did not establish that Mr. Adamson intended to defraud the Greenups when making them. Rather, the record shows that, based on these representations, the Greenups started paying Mr. Adamson $30 per consultation for his assessment of the potential profitability of houses that the Greenups were considering purchasing and renovating. It was only after the Greenups had paid Mr. Adamson several hundred dollars in consultation fees and after Mr. Adamson guided them through the purchase of the Danny Property that the Greenups, again, approached Mr. Adamson with a proposal, this time to work together on flipping houses. Put differently, the Greenups failed to establish that they relied on his alleged misrepresentations, rather than on their experience working with him, when they gave him the $30,000 check.

The Greenups also allege that they transferred the $30,000 to Mr. Adamson "based upon [Mr. Adamson]'s representations concerning the condition, price of the two properties, the anticipated renovation costs, and the anticipated profit to be realized."[31] The Greenups did not present any evidence that Mr. Adamson knew that

---

[30] Although the Supreme Court has held that "'actual fraud' in § 523(a)(2)(A) . . . can be effected without a false representation," *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016), "actual fraud can still be proven by showing that the debtor in fact made a false representation." *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 398 n.1 (5th Cir. 2017).

[31] Joint PTO, ECF No. 15 ¶ 17.A.

8

any of these representations were false. That Mr. Adamson's assessment of the Mountain Property may have been different had he ordered an inspection or seen the interior of the property does not necessarily support a finding of nondischargeability under § 523(a)(2)(A), which requires knowledge that a statement is false. Mr. Adamson's "honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive." *Gen. Elec. Cap. Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). Mr. Adamson testified that he reviewed comparable properties in the area and an appraisal of the property, and the Court finds that Mr. Adamson held an honest belief in his representations to the Greenups about the Mountain Property, including his belief in the potential profitability of the property. "The generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law." *In re Bentley*, 531 B.R. 671, 689 (Bankr. S.D. Tex. 2015) (quoting *Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987)).

Had the Mountain Property been successfully renovated and re-sold, both the Greenups and Mr. Adamson would have realized a profit. "[W]hen assessing whether a debtor possessed the intent to defraud, if room exists for a court to infer honest intent, the issue of non-dischargeability must be decided in favor of the debtor." *Vulcan Constr. Materials, LP (In re Kibel)*, No. 10-05086, 2011 WL 1042575, at *6 (Bankr. W.D. Tex. Mar. 16, 2011) (quoting *PNC Bank, N.A. v. Laskey (In re Laskey)*, 441 B.R. 853, 857 (Bankr. N.D. Ohio 2010)). Upon receiving the $30,000 from the Greenups, Mr. Adamson purchased the Mountain Property (with a hard money loan in his name) and then used the funds from the Greenups for renovations, which arrangement the Greenups and Mr. Adamson had discussed and agreed upon. The Court finds that when Mr. Adamson accepted the Greenups proposal to work together on flipping a house, Mr. Adamson fully intended for all parties to benefit from the partnership and therefore cannot find that he intended to defraud the Greenups.

The Court also finds that both the Greenups and Mr. Adamson knew and accepted the risks inherent in flipping houses and the very real potential for failure. Although the Greenups did not recoup their investment, their partner, Mr. Adamson, also suffered losses. In addition to taking out the hard money loan, Mr. Adamson emptied his personal savings in an attempt to sufficiently renovate the Mountain

Property for resale and to return the Greenups' investment, which efforts ultimately proved fruitless and led to his filing for bankruptcy. The Greenups now seek to hold Mr. Adamson liable for their partnership's losses, but the Court cannot find that the parties intended for Mr. Adamson to be the sole bearer of risk. The Greenups provided the $30,000 check to Mr. Adamson without any terms of repayment or an interest rate; rather, they accepted that the potential upside of their undertaking was the possibility of sharing any profits from the resale of the Mountain Property as well as the corresponding chance that there would be no profits or, as here, a complete loss of their investment.

Given the lack of evidence of fraudulent intent, the Court finds that the Greenups have not met their burden of establishing that Mr. Adamson knowingly made false representations with the intent of deceiving them into giving him money.

**B.     Section 523(a)(4)**

The Greenups allege that Mr. Adamson "engaged in fraud or defalcation while acting in a fiduciary capacity (per the real estate agent-buyer/lay person relationship by and between [the Greenups] and [Mr. Adamson] and/or as a partner or joint venturer), embezzlement or larceny."[32]

Section 523(a)(4) bars the discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Debts are excepted from discharge if they were "incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 588 (5th Cir. 1987)).

The Court finds that none of the debt allegedly owed by Mr. Adamson to the Greenups was the result of fraud or defalcation. The Greenups gave Mr. Adamson money to renovate the Mountain Property, and Mr. Adamson used that money to renovate the Mountain Property. The funds were used in accordance with the agreement between the parties. No evidence or testimony of embezzlement or larceny was presented. The Greenups' alleged debt was not incurred through

---

[32]   Joint PTO, ECF No. 15 ¶ 4.

fiduciary fraud or defalcation or by any criminal act and is therefore not excepted from discharge under § 523(a)(4).

C.   **Section 523(a)(6)**

The Greenups allege that the debt owed to them by Mr. Adamson "is the result of a willful and malicious injury by [Mr. Adamson] to the [Greenups] or to the property of the [Greenups]."[33]

Section 523(a)(6) bars the discharge of a debt "for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). An injury is willful and malicious if "there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003) (quoting *In re Miller*, 156 F.3d at 606). A debt is excepted from discharge under § 523(a)(6) only when the debtor committed "an intentional or substantially certain injury." *Id.*

The Greenups did not establish that Mr. Adamson acted with the requisite intent to except their alleged debt from discharge under § 523(a)(6). While some of Mr. Adamson's actions (and inactions) may have been negligent or reckless, there has been no showing of any intentional or substantially certain injury to the Greenups. The evidence instead shows that both the Greenups and Mr. Adamson lost money on their ill-fated attempt at flipping the Mountain Property. The Greenups' losses are not the result of a willful or malicious injury by Mr. Adamson and not excepted from discharge under § 523(a)(6).

## Conclusion

The Greenups have not proven by a preponderance of the evidence each of the requisite elements of 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6) and thus have not demonstrated that their claim should be declared nondischargeable.

---

[33] Joint PTO, ECF No. 15 ¶ 5.

11

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED AS FOLLOWS**:

1. Judgment is entered in favor of defendant Aaron Adamson and against plaintiffs Perry Greenup and Mary Greenup.

2. Plaintiffs' claim is not excepted from discharge under 11 U.S.C. § 523(a).

# # #